# WINTERS v. COONS.

[No. 20,252.   Filed January 15, 1904.]

TRIAL.—*Answers to Interrogatories.—Conclusion.*—A finding by the jury in answer to an interrogatory in an action on a promissory note that plaintiff purchased the note in suit in the usual course of business, is nothing more than a conclusion, and is not a finding of a particular question of fact as contemplated and provided by §555 Burns 1901. *p. 29.*

BILLS AND NOTES.—*Fraud.—Notice by Indorsee.—Trial.—Answer to Interrogatory.*—An indorsee in an action on a promissory note is not entitled to a judgment as against a general verdict for defendant, where the jury found in answer to an interrogatory that plaintiff "had notice and knew" at the time he purchased the note that it was procured by fraud, as alleged in defendant's answer. *pp. 29, 30.*

APPEAL AND ERROR.—*Bill of Exceptions.—Nemo Debet Esse Judex in Propria Sua Causa.*—A bill of exceptions settled and signed by a judge who had been one of appellant's attorneys in the trial of the cause can not be regarded as a part of the record. *pp. 30, 31.*

From Randolph Circuit Court; *J. W. Macy,* Judge.

Action by Charles A. Winters against Joseph M. Coons. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*James Bingham* and *Jesse Long,* for appellant.

*J. S. Engle, F. S. Caldwell* and *W. G. Parry,* for appellee.

JORDAN, J.—This action was prosecuted in the lower court by appellant to recover against appellee upon a promissory note executed by the latter on November 3, 1898, to Joseph E. Smith, for the sum of $166.66, negotiable and payable at a bank in this State. The complaint alleges that the note in suit was for a valuable consideration assigned by an indorsement to the plaintiff.

The answer of the defendant (appellee herein) consisted of three paragraphs, the first being the general denial which was subsequently withdrawn. The second paragraph alleges substantially the following facts: In August, 1898,

Winters *v.* Coons.

Joseph E. Smith, the payee and indorser of the note in question, represented to the defendant Coons that he had for sale certain imported and valuable winter grape-vines; that these vines were worth $1 each in the usual course of sales. He agreed to deliver 4,200 of them to the defendant, and represented to him that large profits could be made, if he would purchase, plant, and cultivate the vines upon his lands. Smith further represented and agreed that if the defendant would take 4,200 of the vines he would sell them to him at one-half of the cost price, and would pay the other half himself, and become the defendant's partner in the cultivation of the vines. He further represented that he was a man who had much experience in the culture of winter grape-vines, and he agreed, if the appellee would take the vines, that he would plant, prune, and otherwise attend to the culture thereof, and that after they were planted on appellee's premises, he, from year to year, would market the products, and pay to the defendant one-half of the proceeds realized from the sale of the grapes, and at the end of five years he agreed that the vineyard should become the property of the defendant. It is charged that the latter believed these representations, made by Smith, to be true, and relied thereon, and was induced thereby to purchase and agree to pay for 4,200 of these grape-vines, and executed the note in suit, among others, for the purchase money of said vines. It is averred, among other facts, that Smith · delivered one lot of these vines to the defendant, but that they were of an inferior variety, nothing more than mere "culls," etc. After obtaining the note in question, Smith neglected and refused to plant or cultivate the vines, and refused to comply with his agreement, but left the vines which he had delivered to wither and die at the place where he had delivered them, etc. It is charged that the plaintiff (appellant herein) became the holder of the note with full knowledge and notice of all the facts as alleged, and that he paid no consideration

therefor. The third paragraph of the answer alleges facts showing that said Smith, together with others, entered into a conspiracy to defraud the defendant, and thereafter, through fraud and false representations, obtained the execution of the note in suit from the defendant, who, as alleged, was at the time an old and ignorant man. The plaintiff filed a reply to the answer in two paragraphs, the first of which was the general denial. In the second he averred facts to show that he was a broker, engaged in the purchase of commercial paper and had purchased the note in suit in due course of business, for a valuable consideration, before the maturity thereof and without any knowledge or notice that the consideration thereof had failed, or that the note was procured by fraud, and without any knowledge or notice of any of the matters and things alleged in either paragraph of the answer. Upon the issues joined between the parties, there was a trial by jury, which resulted in the return of a general verdict in favor of the defendant. Along with their verdict, the jury also returned their findings upon a series of interrogatories propounded to them. Appellant unsuccessfully moved for judgment in his favor on these special findings or answers to the interrogatories, and thereafter filed his motion for a new trial, assigning therein as reasons, that the verdict was not sustained by sufficient evidence and was contrary to law. This motion was overruled, and judgment was rendered on the verdict of the jury in favor of the defendant for costs.

The errors assigned relate to the court's ruling in denying these respective motions, and for these alleged errors counsel for appellant earnestly contend that the judgment should be reversed.

Some of the special findings made by the jury by their answers to the interrogatories are in some respects indefinite, while others are open to the objection that they are mere conclusions, and others are but a statement of the

evidence, upon which the jury based their findings. It may be said, however, that the findings, so far as they pertain to the issues tendered by the second paragraph of the answer, are, to an extent at least, favorable to appellant. Interrogatory number ten, by which the jury found that appellant purchased the note in suit in the usual course of business, is nothing more than a conclusion, and is not a finding of a particular question of fact, as contemplated and provided by §555 Burns 1901. The jurors, by their answers to interrogatories sixteen and nineteen, expressly find that the plaintiff, at the time he purchased the note, "had notice and knew" that it was procured by fraud, as alleged in the third paragraph of the answer.

Appellant, under the facts alleged in his reply, claimed to be a *bona fide* holder of the note in suit. In order to avoid or break down the defense alleged in the third paragraph of the answer, the burden upon the trial was upon him to establish, *inter alia,* that he purchased the note before its maturity, without having any notice that the execution thereof had been procured by fraud as alleged in the said paragraph of answer. *Shirk* v. *Neible,* 156 Ind. 66, and cases there cited.

From aught appearing in the general verdict, the jury may have found in favor of appellee upon the issues tendered by both paragraphs of his answer, or they may have found in favor of appellant upon the second paragraph and against him on the third. It is certainly evident that under the circumstances the trial court would not have been warranted in awarding appellant a judgment on the answers to the interrogatories, over the general verdict, when the special findings of the jury in answer to interrogatories sixteen and nineteen disclose that at the time he purchased the note he had notice and knew that it had been procured by the fraud alleged and set out in the third paragraph of the answer. If the verdict was in favor of appellee on the third paragraph of the answer, as it

may have been, these particular special findings would certainly be in harmony therewith.  Upon no view of the question under the circumstances would appellant be entitled to a judgment over the general verdict, with these two special findings disclosing that at the time he purchased the note he had knowledge that its execution had been procured by the fraud set out in the third paragraph of the answer.  *Indianapolis, etc., R. Co.* v. *Stout*, 53 Ind. 143.

It is disclosed by the record, together with an affidavit filed therein, that the regular judge of the lower court who presided at the trial, until after the overruling of the motion for a new trial and the rendition of the judgment, but before the bill of exceptions containing the evidence was settled and signed, resigned the office of judge, and thereupon one of appellant's attorneys, who had actively participated as such attorney in the trial of this case in the lower court, was, by the Governor of the State, appointed to fill the vacancy occasioned by the resignation. Said appointee duly qualified as the regular judge of the lower court, and after assuming the duties of the office he settled and signed the bill of exceptions in this case without the knowledge or consent of appellee or his attorneys.  It expressly appears that neither appellee nor any one of his attorneys had any knowledge of the settling and signing of the bill in question until the transcript came into the hands of appellee's attorneys for the purpose of preparing a brief in the appeal.  There is no attempt made on the part of appellant to controvert these facts, or to parry the force of appellee's contention that under the circumstances the bill of exceptions can not be legitimately regarded as part of the record.  That the settling and signing of a bill of exceptions is a judicial act is an uncontroverted proposition.  The point in question, as here presented, is directly ruled by the decision of this court in *Waterman* v. *Morgan*, 114 Ind. 237.  In that case one of the attorneys

for appellant, who assisted in the trial of the case in the lower court, succeeded, by election, the regular judge before whom the case had been tried. After becoming judge of the court, he settled and signed the bill of exceptions containing the evidence. This court in that appeal held that under the circumstances the bill could not be regarded as a part of the record, for the reason that it had been signed by the judge in violation of the ancient maxim of the common law, which declares, "*Nemo debet esse judex in propria sua causa.*" (No one ought to be a judge in his own cause.) Broom's Legal Maxims (7th Am. ed.), 116; Trayner's Latin Maxims and Phrases (4th ed.), 376; Wharton's Legal Maxims (2d ed.), 101.

The principle affirmed by this maxim is not confined alone to a case in which the judge is directly a party, but extends to and applies to a cause in which he can be said to have a personal interest. In the application of the principle asserted by the maxim in controversy in respect to the point herein involved, the question to be determined is not whether the judge who settled and signed the bill of exceptions was influenced in any manner by reason of his having been of counsel in the case (and we do not wish to be understood as intimating that he was in any manner, unfairly or otherwise, influenced in his action), but the purpose of the principle as affirmed is that a judge in the discharge of his judicial functions shall not be placed in a position where he may be subjected to imputation that he labored under the influence of his own interest in the matter. We conclude that under the circumstances the evidence can not be regarded as properly before us, hence no question depending thereon can be reviewed.

Judgment affirmed.

Monks, J., did not participate in the decision of this case.